UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FARMERS INSURANCE EXCHANGE, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>PACIFICORP, et al.,<br><br>Defendants. | No. 2:21-cv-00801-MCE-CKD<br><br>**MEMORANDUM AND ORDER** |

By way of this action, a number of insurance companies (hereafter "Plaintiffs") seek to recover losses incurred for claims paid to their insureds who sustained injuries as a result of the so-called Slater Fire, a September 2020 conflagration that they allege destroyed some 200 structures and burned over 158,000 acres within the Klamath National Forest.  Plaintiffs allege that Defendant PacifiCorp ("Defendant" or "PacifiCorp"), an electrical power provider, caused the fire both by negligent vegetation management and the negligent maintenance, inspection, repair, operation, and ownership of its electricity distribution system.

Plaintiffs initiated this matter, setting forth claims for inverse condemnation and negligence, in the Sacramento County Superior Court, after which Defendant removed it here, ostensibly pursuant to this Court's jurisdiction over federal questions of law. Presently before the Court is Plaintiffs' Amended Motion to Remand, by which they

argue Defendant has failed to establish a basis for federal jurisdiction.  ECF No. 45.  For the following reasons, that Motion is GRANTED.[1]

## STANDARD

When a case "of which the district courts of the United States have original jurisdiction" is initially brought in state court, the defendant may remove it to federal court "embracing the place where such action is pending."  28 U.S.C. § 1441(a).  There are two bases for federal subject matter jurisdiction:  (1) federal question jurisdiction under 28 U.S.C. § 1331, and (2) diversity jurisdiction under 28 U.S.C. § 1332.  A district court has federal question jurisdiction in "all civil actions arising under the Constitution, laws, or treaties of the United States."  Id. § 1331.  A district court has diversity jurisdiction "where the matter in controversy exceeds the sum or value of $75,000, . . . and is between citizens of different States, [or] citizens of a State and citizens or subjects of a foreign state . . . ."  Id. § 1332(a)(1)–(2).

A defendant may remove any civil action from state court to federal district court if the district court has original jurisdiction over the matter.  28 U.S.C. § 1441(a).  "The party invoking the removal statute bears the burden of establishing federal jurisdiction."  Ethridge v. Harbor House Rest., 861 F.2d 1389, 1393 (9th Cir. 1988) (citing Williams v. Caterpillar Tractor Co., 786 F.2d 928, 940 (9th Cir. 1986)).  Courts "strictly construe the removal statute against removal jurisdiction."  Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992) (internal citations omitted).  "[I]f there is any doubt as to the right of removal in the first instance," the motion for remand must be granted.  Id.  Therefore, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded" to state court.  28 U.S.C. § 1447(c).

///

---

[1] Because oral argument would not be of material assistance, the Court ordered this matter submitted on the briefs pursuant to E.D. Cal. Local Rule 230(g).

# ANALYSIS

Defendant initially removed this action asserting federal question jurisdiction on the basis that Plaintiffs' Complaint purportedly raised a cause of action under the Takings Clause of the Fifth Amendment to the United States Constitution.  See Notice of Removal ("NOR"), ECF No. 1.  Shortly thereafter, Defendant filed an Amended Notice of Removal ("ANOR"), adding two arguments: (1) the Klamath National Forest is a "federal enclave" and, as such, exclusive jurisdiction is vested in the federal courts; and (2) this action is removable because Defendant was acting at the direction of a federal officer when it engaged in the conduct underlying Plaintiffs' suit.  ECF No. 15.  None of these arguments are persuasive.

### A. A Drafting Error Does Not Give Rise To Federal Jurisdiction.

In their Complaint, Plaintiffs set forth claims for inverse condemnation under Article 1, § 19 of the California Constitution and for negligence.  Despite ostensibly basing their claims only on state law, in one paragraph of their Complaint, Plaintiffs allege that "[t]he conduct as described herein was a substantial factor in causing damage to a property interest protected by the Fifth Amendment of the U.S. Constitution and Article I, § 19, of the California Constitution . . . . "  ECF No. 1-1 ¶ 69.  It is an unusual situation where Plaintiffs are taking the position that they did not intend to state a federal claim, and Defendant is now arguing that the allegations in the pleading suffice to do so.  Setting aside that incongruity, however, and construing the Complaint in its entirety, especially against the backdrop of Plaintiffs' express and repeated admissions that they only intended to set forth an inverse condemnation claim under California law, the Court concludes that the operative Complaint does not plead a federal Fifth Amendment claim needed to invoke this Court's jurisdiction.  The singular reference to the federal Constitution in Plaintiffs' Complaint, especially when Plaintiffs only allege that the conduct is protected by the Fifth Amendment, but not that they seek to recover under that provision, is insufficient to support removal.

3

**B.     Defendant Has Not Shown That The Klamath National Forest Is A Federal Enclave.**

This Court has jurisdiction over tort claims arising in federal enclaves. Durham v. Lockheed Martin Corp., 445 F.3d 1247, 1250 (9th Cir. 2006). This doctrine is derived from Article I, § 8, Clause 17 of the United States Constitution:

> The Congress shall have power . . . [t]o exercise exclusive Legislation in all Cases whatsoever, over such District (not exceeding ten Miles square) as may, by Cession of particular States, and the Acceptance of Congress, become the Seat of the Government of the United States, and to exercise like Authority over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings.

"Exclusive jurisdiction can be acquired by the United States over land within a state in three ways: (1) by purchase or donation of property with the consent of the state as provided in the United States Constitution; (2) by a reservation of jurisdiction by the United States upon the admission of the state into the union; and (3) the state's cession, together with the United States acceptance, of such jurisdiction." Coso Energy Developers v. Cnty. of Inyo, 122 Cal. App. 4th 1512, 1520 (2004) (internal citations omitted). "A federal enclave is governed exclusively by federal law unless otherwise provided." Hillman v. Leixcon Consulting, Inc., 2016 WL 10988766, at *4 (C.D. Cal. 2016). While Defendant clearly contends that the Klamath National Forest is a federal enclave, the basis for its argument has been a moving target.

For example, Defendant did not raise this argument at all in its original NOR, instead relying at that juncture only on Plaintiffs' mention of the Fifth Amendment. In its subsequent ANOR, however, Defendant contends:

> The United States acquired the land that became the Klamath National Forest by presidential proclamation in 1905. (See Dixon Decl., Ex. 1 [34 Stat. 3001 (May 6, 1905)].) The 1905 presidential proclamation was authorized by Congress in an 1891 Act cited in the proclamation. (See Dixon Decl., Ex. 2 [26 Stat. 1095 (Mar. 3, 1891)].)
> . . .
> The State of California further consented to exclusive federal jurisdiction over all federal lands within its territorial boundaries

4

> during the relevant time period. When the Klamath National Forest was ceded to the federal government, California's then-active general cession statute provided that all cessions to the United States conveyed to the federal government "exclusive jurisdiction over such piece or parcel . . . ceded or conveyed to the United States . . . for all purposes except the administration of the criminal laws of this State and the service of civil process therein." (See Dixon Decl., Ex. 4 [Stats. 1891, Ch. 181, §§ 1–2 (Mar. 31, 1891)].) California's express consent to "exclusive" federal jurisdiction applied not just to land conveyed as of 1891 but also prospectively to any "piece or parcel of land" that "may be hereaf[t]er ceded or conveyed to the United States." Id.
>
> Because the United States acquired the Klamath National Forest prior to 1940, its acceptance of the land coupled with California's express consent to exclusive federal jurisdiction establishes that the Klamath National Forest is a federal enclave. Prior to 1940, "federal acceptance of ceded jurisdiction was presumed absent an express refusal." Fields, 516 F.3d at 935 (citing Fort Leavenworth Ry. Co. v. Lowe, 114 U.S. 525, 528 (1885)); see also Paul, 371 U.S. at 264 ("Thus if the United States acquires [land] with the 'consent' of the state legislature . . . the jurisdiction of the Federal Government becomes 'exclusive.'"); see also id. at 265–66 (interpreting the successor to California's 1891 statute conveying exclusive jurisdiction to ceded lands as creating federal enclaves).

ANOR, ECF No. 15, at 3-5 (alterations in original).  In its Opposition, Defendant concedes this is incorrect.

The United States actually acquired the land now known as the Klamath National Forest from Mexico under the 1848 Treaty of Guadalupe Hidalgo, which ended the Mexican-American war.  See Ex. A, Treaty of Peace, Friendship, Limits, and Settlement, U.S.-Mex., Feb. 2, 1848, 9 Stat. 922 ("Treaty of Guadalupe Hidalgo"), Decl. of Christine Forsline, ECF No. 45-2; Thompson v. Doaksum, 68 Cal. 593, 596 (1886) ("The lands within the territorial limits of the state of California were ceded to our general government by the republic of Mexico under the treaty of Guadalupe Hidalgo of February 2, 1848."). "By that treaty the United States became vested with the title to all the lands in California not held in private ownership by a legal or equitable title."  Thompson, 68 Cal. at 596.

"From 1848 until California's admission to the Union, the United States 'possessed the rights of a proprietor and had political dominion and sovereignty' over the land." Hillman, 2016 WL 10988766, at *3 (quoting Ft. Leavenworth R. Co. v. Lowe,

114 U.S. 525, 526 (1885) (noting that the United States had rights of a proprietor and had political dominion and sovereignty over a military reservation sitting on territory acquired by cession from France before the territory was admitted to the Union as the state of Kansas)). "In 1850, when the United States admitted California to the Union, it did not reserve exclusive jurisdiction over federal lands within California." Id. (citing Act for the Admission of the State of California into the Union, 9 Stat. 452 (Sept. 9, 1850)). Given the foregoing, Defendant now relies solely on the theory that the Klamath National Forest is a federal enclave because, after becoming a state, California somehow ceded, and the United States accepted, exclusive jurisdiction over the land despite the fact that California had never ceded the land itself to the federal government.  See Coso, 122 Cal. App. 4th at 1520.

To that end, Defendant now contends that "California's 1891 cession statute granted exclusive federal jurisdiction to the United States, reserving only criminal jurisdiction." Def.'s Opp., ECF No. 49, at 6-7. That cession statute provides:

> The State of California hereby cedes to the United States of America exclusive jurisdiction over such piece or parcel of land as may have been or may be hereafter ceded or conveyed to the United States, during the time the United States shall be or remain the owner thereof, for all purposes except the administration of the criminal laws of this State and the service of civil process therein.

Act of Mar. 3, 1891, ch. 181, 1891, Cal. Stat. 262. According to Defendant, it follows that Mexico's 1848 cession to the United States of the land now making up the Klamath National Forest is sufficient to result in California's subsequent cession (over forty years later) of exclusive jurisdiction over those lands to the federal government as well.  This argument of course turns on the presumption that California could and did cede exclusive jurisdiction to the federal government over land that California never owned and that was instead originally ceded to the United States by a third party (again, in this case, Mexico).[2]  However, this argument was properly rejected in Coso, 122 Cal. App. 4th at 1520.

---

[2] If this argument seems hard to follow, it's because it is.

6

> In Coso, the Court of Appeal reasoned that the plain language of the [California's 1891 cession] statute was ambiguous as to the identity of the party ceding the land. 122 Cal. App. 4th at 1523-25. The Court of Appeal then turned to the legislative intent of the 1891 Statute, but found that the legislative history provided no meaningful indication of the legislature's intent. Id. at 15. The opinion then looked to other interpretative aids to guide its analysis of the statute. The Coso court considered whether the interpretation would produce absurd results, whether subsequent legislation could be harmonized with the interpretation, and the rule that statutes restricting or derogating a state's sovereignty must be strictly construed in favor of the state. The Court of Appeal concluded that interpreting the 1891 Statute to apply to lands ceded by any party (1) is an unreasonable interpretation that would produce absurd results; (2) is an interpretation that cannot be harmonized with subsequent California statutes and California Attorney General opinions; and (3) is an interpretation that weighs against the state's sovereignty. Id. at 1529-33. The opinion concluded that the 1891 Statute only applies to lands ceded to the United States by California.

Hillman, 2016 WL 10988766, at *5 (emphasis added). "[This] Court finds the comprehensive opinion and reasoning of the Coso court persuasive, and concludes that the Supreme Court of California would adopt the Court of Appeal's reasoning." Id. "Accordingly, the 1891 Statute did not transfer exclusive jurisdiction over [the Klamath National Forest] to the United States." Id.[3]

///

---

[3] It is worth emphasizing just how absurd the results of a contrary conclusion would be. The Coso court elaborated:

> If the statute is read as the Coso entities urge, then the class of actors includes virtually anyone who owns or acquires California land and conveys the land to the United States. The resulting loss of jurisdiction (and tax revenue) would occur by the mere operation of the statute without any further action, approval, or even knowledge of the transfer, by the State of California. A business or other entity seeking to avoid compliance with California regulations or paying state or county taxes, for example, could convey its land to the United States in exchange for the right to operate on the land, and inform the state and county it is now operating within a "federal enclave" beyond California's jurisdiction. Such an extraordinary delegation of the state's power to assert or transfer its jurisdiction has no reasonable or rational basis and would produce patently absurd consequences.

122 Cal. App. 4th at 1527.

1   The California Supreme Court's decision in People v. Hoyt, 8 Cal. 5th 892 (2020),
2   does not compel a different result.  In that case, which was a death penalty appeal
3   resulting in a comprehensive 105-page opinion, the court determined, among many
4   other things, that the Los Padres National Forest was not a federal enclave.  In reaching
5   that conclusion, the court stated that, "although California ceded the lands comprising
6   the Los Padres National Forest to the United States, California also retained jurisdiction
7   to administer its criminal laws on ceded lands."  Id. at 913.  Taken out of context, that
8   sentence appears to support Defendant's argument here.  However, the Hoyt court
9   never actually analyzed the question raised in this case (i.e., whether California had
10  ceded jurisdiction over lands that it had never physically ceded to the United States in
11  the first place) because it concluded that regardless of whether this argument was
12  accepted, exclusive federal jurisdiction still did not attach.  Id.[4]  Accordingly, this Court
13  concludes that the one passing reference the Hoyt court made to California's cession of
14  the Los Padres National Forest in an opinion that comprehensively covered a myriad of
15  other dispositive issues is unsupported dicta and is not binding.  See Norcia v. Samsung
16  Telecommunications America, LLC, 845 F.3d 1279, 1284 (9th Cir. 2017) (only reasoned
17  dicta is binding).  Ultimately, Defendant has failed to show that this Court has jurisdiction
18  over this case under the federal enclave doctrine.[5]
19  ///
20  ///
21  ///

---

[4] Further undermining the Court's confidence in that portion of the Hoyt decision is the fact that the question there, as here, was not whether California ceded the land, as phrased by the Hoyt court, but whether it ceded jurisdiction.

[5] Even if this Court concluded it was bound by the aforementioned dicta, Defendant's argument would still be foreclosed by Hoyt because that court went on to hold that "only a few years later Congress explicitly recognized the states' authority to reserve jurisdiction over national forest lands: In title 16 United States Code section 480, enacted in 1897, Congress provided that the states' jurisdiction 'over persons within national forests shall not be affected or changed by reason' of the creation of national forests."  Id. at 913.  According to the Hoyt court, then, "[b]y this enactment Congress in effect . . . declined to accept exclusive legislative jurisdiction over forest reserve lands . . . . "  Id. (quoting Wilson v. Cook, 327 U.S. 474, 487 (1946)).

## C. Defendant Has Not Shown That Federal Officer Removal Is Proper Here.

"Federal officers, and their agents, may remove cases based on acts performed under color of their federal office if they assert a colorable federal defense . . . . " Durham v. Lockheed Martin Corp., 445 F.3d 1247, 1251 (9th Cir. 2006) (citing 28 U.S.C. § 1442(a)). "A party seeking removal under section 1442 must demonstrate that (a) it is a 'person' within the meaning of the statute; (b) there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and plaintiff's claims; and (c) it can assert a 'colorable federal defense.'" Id. (quoting Jefferson Cnty. v. Acker, 527 U.S. 423, 431 (1999)). Not only has Defendant not convinced this Court that there was a causal nexus between its actions being taken pursuant to a federal officer's directions and Plaintiffs' claims, it has also not asserted any colorable defense.

First, Defendant asserts that "PacifiCorp's operation and maintenance of power lines serves a federal function that the government would have had to perform had it not contracted with PacifiCorp." Def.'s Opp., ECF No. 49, at 2. According to PacifiCorp, that, when "[c]oupled with the extensive direction as to how PacifiCorp must perform that function," it meets its burden to show it acted pursuant to the direction of a federal officer. Id. Defendant, however, is incorrect:

> [A] highly regulated firm cannot find a statutory basis for removal in the fact of federal regulation alone. A private firm's compliance (or noncompliance) with federal laws, rules, and regulations does not by itself fall within the scope of the statutory phrase "acting under" a federal "official." And that is so even if the regulation is highly detailed and even if the private firm's activities are highly supervised and monitored. A contrary determination would expand the scope of the statute considerably, potentially bringing within its scope state-court actions filed against private firms in many highly regulated industries.

Watson v. Philip Morris Companies, Inc., 551 U.S. 142, 153 (2007).

Second, Defendant has not identified any colorable federal defense. To the contrary, each of its proffered defenses turns on arguments the Court has already rejected. More specifically, Defendant contends that: (1) "because the Klamath National

9

Forest is an exclusive federal enclave, Plaintiffs' state law claims based on theories that did not exist when the Klamath National Forest became an enclave in 1891 are barred by the federal enclave doctrine"; and (2) "Plaintiffs' federal inverse condemnation claim is barred because PacifiCorp is not a state actor for the purposes of the Fifth Amendment." Def.'s Opp., ECF No. 49, at 16 (internal quotations omitted).  Neither of these defenses is viable because the Court has already determined that the Klamath National Forest is not a federal enclave, and that Plaintiffs did not bring a federal constitutional claim. Accordingly, for all of the foregoing reasons, Defendant has failed to show this case is removable under the federal officer provision.

## CONCLUSION

For the reasons set forth above, Plaintiffs' Amended Motion to Remand (ECF No. 45) is GRANTED.  The Clerk of the Court is directed to remand this action to the Sacramento County Superior Court and close this case.

IT IS SO ORDERED.

DATED:  June 16, 2022

_____
MORRISON C. ENGLAND, JR
SENIOR UNITED STATES DISTRICT JUDGE